IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00291-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL JOHN SUPPES,

    Defendant.

---

### PLEA AGREEMENT

---

The United States of America, by and through Emily Treaster, Assistant United States Attorney, and the defendant, MICHAEL JOHN SUPPES, personally and through counsel, Lisa Polansky, submit the following Plea Agreement.

### I. PLEA AGREEMENT

A.   **Defendant's Obligations**

1. **Counts of Conviction**

The defendant agrees to plead guilty to the following counts in the Indictment: Counts One, Two, and Six, Smuggling Goods from the United States, in violation of 18 U.S.C. § 554; and Count Eight, Possession of Unregistered Firearms, in violation of 26 U.S.C. § 5861(d). The defendant also agrees to waive his appellate rights, as detailed below, and to admit to forfeiture, as described below.

1

**COURT EXHIBIT 1**

2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 30; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

3. **Forfeiture of Assets**

In exchange for the concessions made by the government, the defendant agrees to forfeiture in the related civil forfeiture action, 19-cv-02935-KLM, on terms set forth in a

separate civil forfeiture settlement agreement. Specifically, as stated in that agreement, the defendant agrees not to contest the civil forfeiture of the following assets: $65,034.16 seized from First Bank Account 8145510716; $16,887.75 seized from First Bank Account 8142726343; $14,064.34 seized from Wells Fargo Bank Account 9048072798; $18,746.00 in U.S. currency; $724.00 in U.S. currency; and 123 miscellaneous firearms, firearms parts, and ammunition. The defendant further agrees to the civil forfeiture of funds to be provided by the defendant in lieu of the forfeiture of the following assets as follows: $100,000.00 in lieu of real property located at 10413 County Road 76 ½ Road, Windsor, Colorado 80550; $25,000.00 in lieu of 2015 Toyota Tundra Crewmax Limited, VIN: 5TFGW5F14FX430497; and $55,000.00 in lieu of all assorted gold and silver coins and bars. The government further agrees not to forfeit the 2015 Toyota Tundra Crewmax SR5, VIN: 5TFDW5F13FX447662. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

B. **Government's Obligations**

1. **Dismissal of Charges**

If the defendant enters an unconditional plea of guilty to Counts One, Two, Six, and Eight and otherwise fulfills all obligations outlined above, the government will dismiss the remaining counts in the Indictment at the time of sentencing. Should the plea or pleas of guilty be vacated on motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

2. **Sentencing Position**

Provided that the guideline range as calculated by the Court is consistent with or higher than the estimated range contained in this agreement, the government agrees to recommend a sentence at the bottom of the advisory guideline range as calculated by the Court. Should Probation or the Court determine that the guideline range is lower, the government reserves its ability to seek an upward variance to the extent necessary to achieve a sentence consistent with the sentencing range calculated in this agreement. The government is not bound to recommend any particular term of supervised release.

3. **Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3-level reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate.

C. **Effect of Withdrawal from Plea Agreement**

The parties stipulate and agree that the government may withdraw from this Plea Agreement under any of the following circumstances: (1) if the defendant does not plead guilty to Counts One, Two, Six, and Eight of the Indictment; (2) if the Court does not accept the defendant's guilty plea; (3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; (4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal, or remand of the count of conviction for any reason; or (5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

Counts One, Two, & Six: Smuggling Goods from the United States

*First*: The defendant knowingly attempted to export or send from the United States any merchandise, article, or object contrary to any law or regulation of the United States or in any manner facilitated the transportation, concealment, or sale of such merchandise, article, or object, prior to exportation, knowing it to be intended for exportation contrary to any law or regulation.

*Second*: The exportation of the merchandise was contrary to the law or regulation of the United States as charged in the indictment.

*Third*: The defendant knew the exportation of the merchandise was contrary to law or regulation.[1]

Count Eight: Possession of Unregistered Firearms

*First*: The defendant knowingly possessed a firearm as defined in the indictment.[2]

*Second*: The defendant knew of the specific characteristics or features of the firearm (i.e., it was a rifle having a barrel of less than 16 inches in length) that caused it to be registrable under the National Firearms Registration and Transfer Record.

---

[1] *See* Pattern Crim. J.I. 5th Cir. 2.26 (elements). There is no Tenth Circuit pattern instruction for this crime.

[2] A short-barreled rifle need not be fully assembled to constitute a firearm. *See, e.g.*, *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 510-12 (1992) (plurality op.).

*Third*: The firearm was or could readily have been put in operating condition.

*Fourth*: The firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.  The government is not required to prove that the defendant knew that the firearm was not registered or had to be registered.[3]

## III.  STATUTORY PENALTIES

The maximum statutory penalties for a violation of 18 U.S.C. § 554 are not more than 10 years' imprisonment, not more than a $250,000 fine, or both; not more than 3 years' supervised release; and a $100 special assessment fee.

The maximum statutory penalties for a violation of 26 U.S.C. § 5861(d) are not more than 10 years' imprisonment; not more than a $10,000 fine, or both; not more than 3 years' supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this Plea Agreement.  That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider

---

[3]   10th Cir. P.J.I. § 2.91.

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." § 6B1.4 Comm.

The parties stipulate to the following facts:

Michael John Suppes, who was not a licensed firearm dealer or manufacturer, willfully engaged in the business of manufacturing and dealing in firearms. He exported firearm parts to buyers in other countries without obtaining an export license. Furthermore, he possessed unregistered firearms while knowing of the specific features of the firearms that caused them to be registrable under the National Firearms Registration and Transfer Record.

A.    **Smuggling Goods from the United States**

The defendant operated a business, MJS Performance LLC, that sold motorcycle muffler parts as well as firearm parts. Between January 25, 2015 and November 5,

2018, the defendant, through his business, shipped over 1,200 domestic and international packages.

The defendant came to the attention of Homeland Security Investigations (HSI) after it learned of multiple packages that contained concealed gun parts destined for other countries. The gun parts required an export license, which the defendant did not obtain.

The packages that form the basis of Counts One, Two, and Six are discussed below. The weapons parts identified in these packages required an export license as set forth in the Indictment. The defendant knowingly attempted to export these items contrary to the law and regulations of the United States, knowing that the exportation of the merchandise was contrary to United States law and regulations.

1. **September 5, 2018 Package Bound for India**

On September 5, 2018, the defendant sent a package bound for India under the name Toy Liquidators with a listed sending address of a UPS store in Fort Collins. The United States Postal Service (USPS) picked up the package from Windsor, the town where the defendant lives, not Fort Collins. The recipient was listed as Jasbinder Kaur in Aligarh, India.

Customs and Border Protection (CBP) inspected the package and found evidence of weapons smuggling. The following weapons parts were found hidden inside a remote-control (RC) car: (1) three Polymer80 PF940SC Subcompact 80% frame kits; (2) two Glock lower parts kits; (3) a Glock .40 caliber complete upper with slide, barrel, and spring; and (4) a Glock .40 caliber compact magazine. The estimated

value of those items is $980, but the defendant described the package as a toy car with a value of $55.

   2. **September 29, 2018 Package Bound for Saudi Arabia**

On September 29, 2018, the defendant sent a package bound for Saudi Arabia under the name Clothing Warehouse Inc. with a listed sending address of a different UPS store in Fort Collins. USPS picked up the package in Windsor. The recipient was listed as Norah Alzahrani with a final destination in Jeddah, Saudi Arabia.

Aramex, a US-based freight forwarder used by the defendant to send several of the charged packages, alerted HSI that the package contained weapons parts. Three rifle barrels were concealed inside of metal shoe racks. The defendant had described the package as "storage accessories."

Between July 2018 through September 2018, the defendant had shipped approximately twenty parcels to this defendant from various shipping addresses.

   3. **February 14, 2019 Package Bound for Cambodia**

On February 14, 2019, the defendant sent three packages bound for Cambodia. He listed the sender as TJ Supply with the address of a UPS store. The recipient was listed as Rith Samnang and was intended to be sent via Modern Travel & Shipping, another US-based freight forwarder, to Samnang in Cambodia.

The packages were x-rayed at a CBP facility, which revealed weapons parts concealed inside three parcels. The first parcel contained two RC cars; hidden inside those car boxes were (1) three P80 Poly handgun lower kits; (2) ten Glock magazine speed loaders; and (3) one Glock 19 complete upper. The second parcel likewise

contained two RC cars, which concealed (1) two P80 Poly handgun lower kits; (2) eight Glock 9mm magazines; (3) one Springfield handgun frame; (4) a Glock 48 complete upper; (5) a Glock 19 complete upper; and (6) two rifle buttstock extensions. The third parcel also contained two RC cars, which concealed (1) four Glock 9mm magazines; (2) five Glock handgun locks; (3) two rifle stock springs; (4) one rifle sight; and (5) three Glock 19 complete uppers.

B.     **Possession of Unregistered Firearms**

On December 20, 2018, an undercover agent ("UC") used a covert eBay account to browse MJS Performance's eBay site and purchase a Glock handgun trigger kit. Before the purchase was finalized, the UC received the following message: "This item is regulated by Part 121 of the International Traffic in Arms Regulations (ITAR). By bidding on or purchasing this item, you confirm that you're buying this item for your own use, that you're a U.S. citizen or permanent resident of the U.S., and that you won't export this item outside the U.S."

The UC received a tracking number via email from "Michael Suppes" at no-reply@stamps.com. The package containing the kit was mailed from MJS Performance LLC at the defendant's address in Windsor.

The next day, the UC purchased a complete 9mm handgun upper and barrel and firearm lower frame kit. The invoice was sent from sales@mjsperformance.com, and the package was mailed from the defendant's home.

Starting on December 26, 2018, the UC sent emails to the defendant informing him that he was currently in Mexico and offering to purchase firearm parts in bulk. The

defendant directed the UC to create an email account with Protonmail, an encrypted email service hosted outside the United States, to communicate.

The UC began using Protonmail to communicate with the defendant on December 27, 2018. The UC told the defendant that he intended to purchase firearm parts in bulk and asked if the defendant would ship them to Mexico, but the defendant said no. The UC indicated that he would locate someone to smuggle the firearm parts into Mexico from Texas.

The UC purchased firearm parts for ten handguns from the defendant. The UC told the defendant to mail the firearm parts to a PO box in El Paso, Texas, and the defendant would then smuggle the firearm parts into Mexico. The UC wired a total of $7,035 to the defendant in three separate MoneyGram payments. The defendant and his wife picked up the payments at a Walmart, which was captured on security footage.

The UC introduced the defendant via email to a second UC (UC 2) in Mexico who wanted to purchase firearm parts. When the defendant asked UC 2 what he wanted to purchase, UC 2 responded: "let me talk to my people here in Juarez and see what I need to order i can pick them up in el paso and bring them here." UC 2 ultimately decided to purchase firearm parts for three assault rifles, four Glock handguns, magazines, and $3,000 rounds of ammunition in exchange for $10,000.

On April 17, 2019, the defendant met with the UC and UC 2. In addition to the firearm parts, the defendant provided the UCs with power tools to complete them. The defendant customized one of the firearm parts for UC 2 with the colors of the Mexican flag. During the meeting, the UCs discussed smuggling the weapons into Mexico. The

defendant suggested that UC 2 cover the gun parts with steel sheets to defeat the x-ray machines at the border. The defendant asked the UCs if they were law enforcement, which they denied. Also during the meeting, the UC told the defendant that he wanted to purchase an additional 30 to 50 rifles that he could resell.

The next day, the UC emailed the defendant to discuss the purchase of fifty completed, functional rifles. The defendant agreed to sell the UC fifty rifles with 10-inch barrels for $1,600 each. The defendant offered to transport the rifles to the UC in El Paso, Texas, near the Mexican border for an additional $2,000. He agreed to sell and deliver the fifty rifles, comprised of thirty AR-15 and twenty AK-47 rifles, along with magazines and ammunition for $84,650. He explained that 27 of the 30 AR-15 rifles would have 10-inch barrels and all 20 of the AK-47 rifles would have 10-inch barrels.

The UC subsequently changed the meet date and location to May 30, 2019 in Pueblo, Colorado. A few days before May 30, the defendant directed the UC to use Signal, an encrypted messaging service that features self-deleting text messages. The defendant told the UC to set a destruction time of 24 hours or less and told him not to add his number to the UC's contacts.

Early on the morning of May 30, the UC texted the defendant and told him that he would meet him at noon. The defendant responded that he would see him then.

At approximately 8am, the defendant left his residence in a pickup truck with his wife and kids. Colorado State Patrol (CSP) surveilled the vehicle as it traveled south on I 25.

CSP stopped the defendant's vehicle near Firestone, Colorado, and the defendant was arrested pursuant to probable cause. The vehicle contained 50 AR-15 and AK-47 rifles as well as magazines and ammunition. One of the rifles was customized with the colors of the Mexican flag, as the UC had requested. The completed rifle uppers and completed lowers were separated, but they could be fully assembled in less than three seconds.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") confirmed that the defendant is not licensed to deal or manufacture firearms under federal law. The defendant knew the length of the barrels. Because of the length of the barrels, the 50 rifles qualify as short-barreled rifles. They must be registered under the National Firearms Registration and Transfer Record, but they were not.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of sentence in this case is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent

obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

### Offense Level

A. The base offense level for Count Eight is **18**. § 2K2.1(a)(5).

B. The following specific-offense characteristics apply: (1) there is a **6**-level increase pursuant to § 2K2.1(b)(1)(C) because the offense involved between 25 and 99 firearms; (2) there is a **4**-level increase pursuant to § 2K2.1(b)(5) because the defendant engaged in the trafficking of firearms; and (3) there is a **4**-level increase pursuant to § 2K2.1(b)(6) because the defendant possessed or transferred any firearm with knowledge, intent, or reason to believe that it would be transported out of the United States and because he possessed any firearm in connection with another felony offense.

C. The following multiple-count adjustment applies: there is a **1**-level increase because the offense level for Counts One, Two, and Six is 26, which is 6 levels less serious than the offense level for Count Eight.

D. The defendant should receive a decrease in the offense level by **-3** based upon his acceptance of responsibility. § 3E1.1(a).

E. The adjusted offense level is **30**.

### Criminal History Category

F. The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative. The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") **I**. § 4A1.1.

G. The career offender and repeat and dangerous sex offender adjustments tentatively do not apply. § 4B1.1; § 4B1.5.

### Guideline Range

H. The guideline range resulting from the estimated offense level of 30 and the estimated criminal history category of I is **97** to **121** months' imprisonment. The guideline range would not exceed, however, the statutory maximum of 120 months applicable to the counts of conviction.

I. Pursuant to § 5E1.2, assuming the estimated offense level of 30, the fine range for this offense would be $30,000 to $300,000, plus applicable interest and penalties.

J. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least one year but not more than three years.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 5/29/20

Michael John Suppes
Defendant

Date: 6/2/20

Lisa Polansky
Attorney for Defendant

Date: 6/25/20

/s/ Emily Treaster

Emily Treaster
Assistant U.S. Attorney